IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM MINTON                          *
       Plaintiff,
   v.                                   *   CIVIL ACTION NO. JKB-14-1554

WARDEN KATHLEEN GREEN                   *
D. CHILDERS, CSO1
CAPTAIN D. MATTHEWS                     *
       Defendants.
                                   *****

MEMORANDUM

On May 9, 2014, William Minton filed this 42 U.S.C. § 1983 suit while incarcerated at the Eastern Correctional Institution ("ECI").[1] He seeks injunctive relief, along with nominal and punitive damages. ECF Nos. 1 & 13.

**I. BACKGROUND**

Minton claims that he ordered three out-of-print "old stock" books, originally published in the 1980s from a bookstore in Baltimore County, Maryland. He claims that in April of 2014, during the dispensing of inmate property, he was informed by defendant Childers that he was not allowed to receive those books because they were deemed "used" and he was given the option of either having the books destroyed or sending them home at his expense.[2] ECF No. 1. Minton asserts that Childers agreed to place the books on a thirty-day hold pending his administrative remedy procedure ("ARP") grievance. *Id*.

---

[1] Minton has been released from state confinement.

[2] Minton points to an earlier federal case he was involved in against ECI Warden Green involving a ban on reading materials. The court finds no record of plaintiff's earlier involvement in federal litigation.

Defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment, which has been construed as a motion for summary judgment. ECF No. 19. Minton has filed an opposition response (ECF No. 25), a supplemental declaration (ECF No. 28), and a motion for summary judgment. ECF No. 31. The complaint and responsive pleadings are ready for review. Oral hearing is deemed unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For reasons to follow, defendants' dispositive motion, construed as a motion for summary judgment, shall be GRANTED and Minton's motion for summary judgment shall be DENIED.

**II. LEGAL STANDARD OF REVIEW**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a defendant's motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris,* 550 U.S. 372, 378 (2007); *Iko v. Shreve,* 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed.R.Civ.P. 56(c)(1). Supporting and

2

opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

## III. ANALYSIS

Defendants argue that ECI has published its own directives in accordance with Division of Correction Directives, which provide that "only new books may be purchased directly from the publisher" and that "[n]o books will be accepted from entities such as Amazon.com and EBay (list not inclusive)."[3]  ECF No. 19-1.

Sergeant Michelle Switalski affirms in her declaration that used books are prohibited at ECI because bindings in used books can be used to easily hide contraband. Therefore, to avoid having to replace books that may be damaged during inspection, books must be ordered directly from the publisher. ECF No. 19-2, at Switalski Decl. The books are then inspected at the central warehouse and forwarded to the various institutional property rooms for distribution. Defendants affirm that Minton's books remain in the custody of the ECI Housing Unit Property Office pending "the outcome of the proceeding." *Id*.

Defendants maintain that Minton filed an ARP regarding Childers's refusal to allow him to possess the books. ECF No. 19-3. The ARP was dismissed subsequent to an investigation. The Executive Director of the Inmate Grievance Office ("IGO") affirms that Minton did not grieve the issue regarding the retention of the books to the IGO. ECF No. 19-4, at Oakley Decl. Defendants assert that Minton has otherwise failed to exhaust his administrate remedies prior to filing this action as required under 42 U.S.C. § 1997(e).

In his opposition response, Minton claims that his books were ordered from a distributor and

3

were inspected at the warehouse and forwarded to the property room for dispensing. He contends that the books were denied to him although he previously "won a similar suit"; further, he contends a blanket ban on published material violates his right to due process and a rule banning all novels is not reasonably related to security. Minton further asserts that he filed an ARP and is continuing to pursue his remedies as to the retention of the books through the IGO during the pendency of this case. ECF No. 25-1.

## IV. DISCUSSION

The court must first examine defendants' assertion that Minton's claims must be dismissed due to his failure to "properly" exhaust available administrative remedies. The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Minton's allegations. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md.

---

[3] *See* ECI.ID.220.004.1.05.a (10). ECF No.19-1

2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann., Corr. Serv. §§ 10-206, 10-210 and Code of Maryland Regulations ("COMAR"), Title 12 § 07.01.05; *see also* Division of Corrections Directive ("DCD") 185-002, § VI.N I.

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action

or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Blake v. Ross*, 787 F.3d 693, 700-01 (4th Cir. 2015) (inmate's belief that he exhausted administrative remedies was a reasonable interpretation of investigative and grievance procedures).

Minton acknowledges that he did not complete the grievance process before filing this complaint. A prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. *See Woodford,* 548 U.S. at 88; *Johnson v. Jones,* 340 F.3d 624, 628 (8th Cir. 2003) (dismissal is required under § 1997e(a) if an inmate has failed to exhaust all available administrative remedies *prior* to filing suit).

Even if exhaustion requirements were found to be met and the court were to look at the merits of Minton's claims, the Court would find no constitutional violations. "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley,* 482 U.S. 78, 84–85 (1987); *see also Thornburgh v. Abbott,* 490 U.S.

401, 413 (1989) (holding *Turner* analysis applies to prison regulations affecting the sending of a publication to an inmate, *i.e.,* incoming publications). Under *Turner,* "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. In making this determination, the court is guided by four factors. *Id.* at 89–90.

"First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Id*. at 89 (quotations omitted). The logical connection between the regulation and its asserted goal cannot be so remote as to render the regulation arbitrary or irrational. *Id*. at 89–90. The legitimate governmental objective must also be neutral. A regulation restricting an inmate's First Amendment rights must operate without regard to the content of the expression. *Id.* Where a regulation furthers an important or substantial government interest unrelated to the suppression of expression, the neutrality requirement is met. *Thornburgh*, 490 U.S. at 415. In other words, where prison officials "draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are 'neutral'...." *Id*. at 415-16.

Second, the court must ask "whether there are alternative means of exercising the right that remain open to prison inmates." *Turner,* 482 U.S. at 90. "[T]he right in question must be viewed sensibly and expansively." *Thornburgh,* 490 U.S. at 417 (quotations omitted). "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Turner,* 482 U.S. at 90 (citation and quotations omitted). The "alternatives need not be ideal[;] they need only be available." *Wardell v. Duncan,* 470 F.3d 954, 961 (10th Cir. 2006) (quotations omitted). Even if the alternative is not the "best method from the inmate's point of view,

... the second *Turner* factor does not undercut the challenged restriction." *Id.* at 961-62 (quotations omitted).

Third, the court shall examine the impact accommodation of the asserted constitutional right would have on guards, other inmates, and prison resources. *Turner,* 482 U.S. at 90. In the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order. When accommodation of an asserted right will have a significant ripple effect on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials. *Id.* at 90 (quotations omitted); *see also Thornburgh,* 490 U.S. at 418 (where the right in question can only be exercised "at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike, the courts should defer to the informed discretion of corrections officials") (citation and quotations omitted).

Finally, the court must determine whether obvious, easy alternatives exist that fully accommodate inmates' rights at *de minimis* cost to valid penological interests. If so, the regulation may not be reasonable but an "exaggerated response" to prison concerns. *Thornburgh,* 490 U.S. at 418 (quotations omitted); *Turner,* 482 U.S. at 90. However, "[t]his is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner,* 482 U.S. at 90–91. Nevertheless, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91.

The Court concludes that the ECI directive banning incoming used books not sent directly by the publisher is not unconstitutional. Minton was allowed to receive new books sent directly from

the publisher. The ban is expressly aimed at advancing jail security and protecting the safety of jail personnel and other inmates and is logically connected to those goals. *See Thornburgh,* 490 U.S. at 415 (prison security is a legitimate governmental purpose "central to all other corrections goals") (quotations omitted). To allow inmates to possess used books from stores or e-commerce companies such as Amazon.com and eBay could have a significant impact on the safety and security of prison personnel and other inmates. Lastly, Minton points to no alternative that fully accommodates his rights while at the same time imposing *de minimis* cost to valid penological interests. Therefore, the prison's ban on incoming used books sent from non-publishing companies passes constitutional muster.

## IV.  CONCLUSION

In the absence of a genuine dispute of material fact justifying a trial on the merits in this case, defendants' motion for summary judgment shall be granted.[4] A separate Order effecting the rulings made in this opinion is entered herewith.

Date:  July 13th, 2015                         /s/
                                               James K. Bredar
                                               United States District Judge

---

[4] In light of this decision, Minton's request for injunctive relief and motion for summary judgment shall be denied.